UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT MONAHAN, | ) | |
| | ) | |
| Plaintiff, | ) | No. 17 C 7702 |
| | ) | |
| v. | ) | Magistrate Judge M. David Weisman |
| | ) | |
| NANCY A. BERRYHILL Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security, | ) ) ) ) ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Robert Monahan brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the Social Security Administration ("SSA's") decision denying his application for benefits. For the reasons set forth below, the Court reverses the SSA's decision.

**Background**

Plaintiff applied for disability benefits on February 1, 2014, alleging a disability onset date of November 2, 2012. (R. 98-100.) His application was initially denied on May 19, 2014, and again on reconsideration on February 27, 2015. (R. 98, 111.) Plaintiff requested a hearing, which was held by an Administrative Law Judge ("ALJ") on October 27, 2016. (R. 37-86.) On January 12, 2017, the ALJ issued a decision finding plaintiff not disabled. (R. 18-32.) The Appeals Council denied review (R. 1-3), leaving the ALJ's decision as the final decision of the SSA. *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

**Discussion**

The Court reviews the ALJ's decision deferentially, affirming if it is supported by "substantial evidence in the record," *i.e.*, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *White v. Sullivan*, 965 F.2d 133, 136 (7th Cir. 1992) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Although this standard is generous, it is not entirely uncritical," and the case must be remanded if the "decision lacks evidentiary support." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. Under the regulations, the SSA must consider: (1) whether the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether the claimant's impairment meets or equals any listed impairment; (4) if not, whether the claimant retains the residual functional capacity ("RFC") to perform her past relevant work; and (5) if not, whether he is unable to perform any other work existing in significant numbers in the national economy. *Id.*; *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001). The claimant bears the burden of proof at steps one through four, and if that burden is met, the burden shifts at step five to the SSA to provide evidence that the claimant is capable of performing work existing in significant numbers in the national economy. *See* 20 C.F.R. § 404.1560(c)(2).

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of November 2, 2012. (R. 20.) At step two, the ALJ found that plaintiff has the severe impairments of "a history of deep vein thrombosis and pulmonary embolism, depression/bipolar disorder and avoidant personality traits." (*Id.*) At step three, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (*Id.*) At step four, the ALJ found that plaintiff was capable of performing his past relevant work ("PRW") as "a building maintenance laborer," and thus was not disabled. (R. 30-32.)

Plaintiff contends that the ALJ erred in concluding that plaintiff's PRW was as a building maintenance laborer. Instead, he seems to argue, the record shows that his PRW was a composite job, *i.e.*, consisted of the duties of both a building maintenance laborer and a security guard. *See* Social Security Administration, Program Operations Manual System, DI 25005.020B, *available at* https://secure.ssa.gov/apps10/poms.nsf/lnx/0425005020 (last visited June 19, 2018) (stating that a composite job is one that has "significant elements of two or more occupations" and "takes multiple DOT occupations to locate the main duties of the PRW as described by the claimant").

Plaintiff, whose testimony controls, *see* SSR 82-62, 1982 WL 31386, at *3 (Jan. 1, 1982) ("The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level[,] exertional demands and nonexertional demands of such work."), said that from 1999 to 2005, he worked as a security guard. (R. 52-53.) However, starting in 2005, plaintiff said, his employer added laborer duties to his security guard duties so that, by the end of his employment in 2012, seventy-five to eighty percent of plaintiff's work time was spent performing laborer duties. (R. 79.) Given this

undisputed testimony, the ALJ's conclusion that plaintiff's PRW was as a building maintenance laborer was error.

The error is harmless, however because the ALJ's decision that plaintiff is not disabled does not rest on plaintiff's ability to perform his PRW. Rather, the ALJ also found that plaintiff has the RFC to perform other jobs that exist in significant numbers in the national economy. (*See* R. 31-32.) Accordingly, the ALJ's PRW error is not a basis for remanding the case. *See Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) (stating that the doctrine of harmless error applies to judicial review of Social Security benefits cases).

The situation would be different if the ALJ wrongly concluded that there are other jobs plaintiff can perform, which is plaintiff's next argument. In plaintiff's view, the VE's testimony was flawed because the hypotheticals on which it was based were incomplete. Specifically, plaintiff says, none of the hypotheticals the ALJ posed contained all of the limitations in the RFC he crafted. The Court disagrees.

The ALJ found that plaintiff has the RFC to:

> [P]erform medium work . . . except [he] can only frequently climb ladders, ropes, scaffolds, ramps and stairs. The claimant has difficulty carrying out complex tasks, but can understand, remember and carry out simple instructions. He can perform work requiring only simple decision making and no sustained interaction with the public. The claimant is limited to work that involves only occasional interaction with coworkers and supervisors.

(R. 23.) The ALJ's hypotheticals to the VE encompassed all of these limitations. The ALJ first asked the VE to:

> [A]ssume . . . a hypothetical individual who's limited . . . to the medium exertion demands of work, who retains abilities to perform climbing of all kinds on a frequent basis. This individual has difficulty carrying out complex instructions and [doing] complex tasks, but retains the ability to understand remember and carry out simple tasks. Also, those tasks or [sic] would be accompanied only with simple decision making required. Further assume that this individual is unable to sustain interaction with the public. . . .

4

(R. 81.) He then asked the VE to assume that the hypothetical individual described was also limited to "only occasional superficial interaction with coworkers and supervisors," and, like plaintiff, is approaching or at advanced age and has a high school education. (R. 82-83.) The VE testified that such an individual could perform the jobs of kitchen helper, hospital food service worker, hospital cleaner, and laundry laborer. (R. 83.) In short, the record does not support plaintiff's assertion that the ALJ's hypotheticals were incomplete.

Plaintiff's next challenge is to the RFC, which he contends does not adequately account for his limitations in social functioning. With respect to social functioning, the RFC limits plaintiff to "no sustained interaction with the public" and "occasional interaction with coworkers and supervisors." (R. 23.) Plaintiff says this is insufficient because "[t]he individual described at Step 3 [of the ALJ's analysis] did not seem to demonstrate any ability to interact with people other than close family." (Mem. Supp. Mot. Summ. J., ECF 17 at 14) (citing R. 21.) On the contrary, though the ALJ noted that plaintiff rarely socialized with anyone, he also said that: (1) plaintiff "did not have any difficulty interacting with his treatment providers," family, friends, or neighbors; (2) plaintiff's psychiatrist "consistently indicated that [plaintiff's] behavior was socially appropriate"; and (3) plaintiff "had never been fired from a job because of difficulty getting along with others." (R. 21.) The record supports these findings. (*See e.g.*, R. 242-43 (plaintiff stating in a function report that his impairments do not impact his ability to get along with others, that he gets along "fine" with authority figures, and has never lost a job because of interpersonal problems); R. 434, 459, 482, 497, 503 740, 746, 751 (doctors' notes stating that plaintiff was cooperative and had appropriate judgment in social situations).)

Plaintiff also argues that the RFC's limitation to work that involves understanding, remembering, and carrying out simple instructions and requires only simple decision making

does not adequately account for plaintiff's moderate difficulties in maintaining concentration, persistence or pace. The Court agrees. The Seventh Circuit has said that "[t]he ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010). Thus, limiting plaintiff to making simple decisions and carrying out simple instructions does not address his well-documented problems with persisting in tasks. (*See, e.g.*, R. 73-74 (plaintiff's brother's testimony that plaintiff lacks the initiative to attend to basic life activities like taking care of correspondence and bills, taking his medication, and attending doctor's appointments); R. 45-47, 55-57, 65-66, 68 (plaintiff's testimony that he quit his job in November 2012 and did not look for work thereafter, he quit taking his medication and seeing his doctor in 2015 "because [he was not] following through with what [he] need[ed] to do," he did not seek psychiatric treatment from 2012 to 2014, though he knew he needed it, because he thought if he "ignore[d] the problem . . . it[] [was] going to solve itself," and his license was suspended in 2006 for failing to take an emission test and he never took any action to get it reinstated).) Because that is the only RFC limitation that purports to address plaintiff's problems with concentration, persistence and pace, the case must be remanded for a new RFC determination.

Another issue that must be revisited on remand is the assessment of the opinions of plaintiff's treating psychiatrist, Dr. Hall-Ngorima. An ALJ must give a treating physician's opinion controlling weight if "it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2); *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). The ALJ must give good reasons for the weight that it assigns a treating physician's opinion. *Bates v. Colvin*, 736 F.3d 1093, 1101 (7th Cir. 2013). "If an ALJ does not give a treating physician's opinion

controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009); *see* 20 C.F.R. § 404.1527(c).

Among other things, Dr. Hall-Ngorima opined that, because of his mental impairments, plaintiff would be unable to sustain an ordinary routine throughout a workday or complete a normal workweek, would be off task an average of twenty-five percent of a workday, and could perform a job with only sixty percent of the efficiency of an average worker. (R. 600-02.) The ALJ gave these opinions "little weight" because: (1) they are "inconsistent with [the doctor's] own treatment notes;" (2) "the evidence indicates that [plaintiff] was able to attend frequent appointments at the Cook County Hematology clinic" without "[any] indication that he missed appointments on a regular basis;" and (3) despite plaintiff's "long history of a lack of initiative, problem solving skills, odd behavior and seclusion," he was gainfully employed from 2000 through his alleged onset date in November 2012. (R. 27-28.)

The ALJ does not, however, identify which of Dr. Hall-Ngorima's treatment notes are inconsistent with these opinions, and this Court is not obliged to scour the 839-page record looking for support for this contention. *See Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005) ("We will not scour a record to locate evidence supporting a party's legal argument."). Moreover, the fact that plaintiff attended periodic clinic appointments is a far cry from establishing that he can work a normal workday and week. *Cf. Spiva*, 628 F.3d at 352 ("[A]n ability to engage in 'activities of daily living' (with only mild limitations) need not translate into an ability to work full time."). Finally, the fact that, despite his behavioral quirks, plaintiff worked until the alleged onset date suggests that his pre-onset impairments, if any, were not disabling, not that his post-

7

onset impairments are mild or illusory. In short, the ALJ's assessment of Dr. Hall-Ngorima's opinions is flawed and must be addressed on remand.[1]

## Conclusion

For the reasons set forth above, the Court grants plaintiff's motion for summary judgment [16], denies SSA's motion for summary judgment [24], reverses the SSA's decision, and remands this case for further proceedings consistent with this Memorandum Opinion and Order.

**SO ORDERED.**                    **ENTERED:   July 2, 2018**


_____
**M. David Weisman**
**United States Magistrate Judge**

---

[1] Plaintiff also contests the ALJ's credibility finding/symptom evaluation. Because that issue is intertwined with the assessment of the medical evidence, it will have to be revisited on remand as well.